## WARREN v. ROGERS.

(Supreme Court, Appellate Division, Fourth Department. November 12, 1901.)

TRIAL—EVIDENCE—INSTRUCTIONS—CHARGE TO JURY—UNDUE HASTE—REVERSAL.

The issue was whether the grantee in a deed had knowledge of a clause therein whereby he assumed the payment of a mortgage on the premises conveyed. He claimed that his son, who had conducted the negotiations leading up to the giving of the deed, and who had signed his father's name to the deed as agent, had had no authority to bind the father. Two days were taken in the trial of the case, and the testimony of most of plaintiff's witnesses had been taken by depositions which were read

to the jury. At the close of the evidence the court allowed only 15 minutes on each side in which to sum up the case, and commenced his charge by informing the jury that it was necessary that the court should take a train that would leave shortly; that there was but one question, and that it looked as if the jury could decide it about as quickly as counsel had presented it; and charged that there was but a single question of fact, to wit, whether the grantee had knowledge of the essential facts in regard to the assumption clause in the deed. No analysis of the testimony was presented to the jury, nor any explanation of the assumption clause. *Held*, that the case did not receive that consideration from the court which the litigants were entitled to receive, and a new trial would be granted.

Appeal from trial term, Jefferson county.

Action by James B. Warren against Louisa Rogers, as executrix of Orlo Rogers, deceased. From a judgment in favor of defendant, plaintiff appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Virgil K. Kellogg, for appellant.

Watson M. Rogers, for respondent.

SPRING, J.  On the 21st day of April, 1890, W. H. Ramsey and wife and J. H. Ramsey of the city of Sioux Falls, S. D., executed and delivered to J. W. Bailey, Jr., their mortgage upon a lot owned by them and situated on Main avenue, in said city, to secure the payment of the sum of $3,000, with interest thereon at 7 per centum, to be paid in accordance with a promissory note or bond of even date therewith, given by the said W. H. and J. H. Ramsey; and said mortgage also contained the personal covenant of the said two mortgagors to pay the said sum of $3,000. The said indebtedness became due May 1, 1895, and the mortgage was recorded April 22, 1890. These premises were conveyed to the plaintiff by a warranty deed bearing date May 1, 1890, and recorded June 14th, following; and said deed contained an assumption clause reciting that the grantee "assumes and agrees to pay" the mortgage above described. By deed bearing date on the 18th day of June, 1894, but delivered November 5th of that year, the plaintiff conveyed said premises to Orlo Rogers, the defendant's testator, and a like assumption clause was contained in that deed, which was recorded November 7, 1894. Simultaneously with the delivery of this conveyance, and as part consideration for it, the said Orlo Rogers and wife conveyed to the plaintiff a farm of 120 acres in Aurora, S. D., upon which there was a mortgage of $800, the payment of which said plaintiff assumed in the deed delivered to him. Possession of the city lot was at once taken by virtue of the deed from the plaintiff, and he went into possession of the farm. In November, 1894, an action to foreclose said Ramsey mortgage was commenced in the state court of South Dakota, and both the plaintiff and Orlo Rogers, who lived in Jefferson county, in the state of New York, were named defendants in the action and judgment for deficiency was asked in the complaint against these two defendants. Orlo Rogers appeared in that action by his brother-in-law, Cyrus Walts, an attorney at law residing at Sioux Falls,

aforesaid, and this paved the way for a personal judgment against said Orlo Rogers for any deficiency which might result. During the pendency of that action, by deed of conveyance executed November 22, 1894, but not delivered until January, 1895, said Orlo Rogers conveyed said city lot to C. W. McKinney, and that deed, which was recorded January 10, 1895, contained an assumption clause of the said $3,000 mortgage identical with the one contained in the other deeds. Said foreclosure action did not go to judgment, but the plaintiff paid the whole amount thereof, and has commenced this action to recover against the executrix of Orlo Rogers, who died before its commencement, on the theory that by the assumption clause in the deed said Rogers became primarily liable for its payment, and that the said plaintiff, by meeting the obligation resting upon him to the holder of the mortgage, became subrogated to all the rights and remedies available to that holder. It appears by the statutes of South Dakota that a surety who satisfies an obligation "with or without legal proceedings" can enforce reimbursement from his principal, and avail himself of every remedy which the creditor has against the principal. Sections 4307, 4308, Comp. Laws S. D. The common-law liability that the grantee in a deed who assumes and agrees to pay an outstanding incumbrance upon the property conveyed becomes the primary debtor, and his grantor is thereafter his surety, obtains in the state of South Dakota.

This skeleton statement of these transactions on the face of the papers contains every element to make the plaintiff's cause of action invincible. The plaintiff was personally liable for the payment of the mortgage debt. Orlo Rogers assumed and agreed to pay that indebtedness by a covenant in the deed which vested him with the title. He recognized the force of this assumption clause by embodying a like covenant in the conveyance by which he parted with the title. When sued in the foreclosure action, he brought himself within the jurisdiction of the South Dakota court, and further gave emphasis to the effectiveness of this assumption clause by not interposing any defense, and yet, by his appearance, rendered it possible for a personal judgment to be recovered against him. The controversy between the parties does not involve any criticism of the well-settled principles of law adverted to, but impugns the conveyances themselves to the extent of claiming that the transaction culminating in the deed from the plaintiff to Orlo Rogers was carried on by Burt Rogers, a son of the said Orlo Rogers, who had no authority to saddle liability upon the latter for the payment of this mortgage. At the time of the delivery of this deed the plaintiff resided, and in fact was, in England. He came to this country in 1880, locating in Iowa, becoming an American citizen; and had charge of a large tract of land in that vicinity for an English trust company, and had some dealings on his own account in South Dakota and Iowa. The said Burt Rogers during this time was residing in Sioux Falls, and was engaged quite extensively in buying and selling real estate, chiefly as agent or broker. In 1894 the plaintiff had again taken up his residence in England, but had returned here to look after his property interests and those intrusted to him. In June of that year he re-

turned to his home country, but left with his agent a deed executed by himself and wife of the premises in South Dakota, except that it did not contain the name of any grantee or consideration. It did contain the assumption clause referred to, and the purpose was to permit the agent of the plaintiff, if opportunity offered, to effect a sale of the premises by inserting the amount of the consideration and the name of the grantee in the deed and delivering it, thus avoiding the necessity of obtaining a conveyance from the plaintiff in England. Burt Rogers and Preston, the agent of the plaintiff, met pursuant to an arrangement at the office of Mr. McGilvra, a dealer in real estate living at Larchwood, Iowa, and who was also an agent of the plaintiff. McGilvra and Preston testified that at that time the name of Orlo Rogers as grantee was written in the deed from the plaintiff, and the consideration also inserted; that at the same time Warren's name as grantee was written in the conveyance of the Aurora farm, and the deeds were then delivered. Burt Rogers testified that he told Preston and McGilvra that he had no authority to act for or take title in his father, but finally consented to do so at the urgent solicitation of these men. He further testified that as a matter of fact he never possessed any authority to act on behalf of his father; that the conveyance of the Aurora farm was taken in the name of the father because the son was in embarrassed circumstances, but the father had no actual interest in the property. At the time the deeds were delivered, Mr. Preston had not seen the Aurora farm, and a written guaranty of the title was executed, containing also statements as to the number of acres in the tract, its quality, and that the interest on the $800 mortgage had been paid to May 1, 1894. Burt Rogers signed his father's name to this paper, "By Burt Rogers, Agent." Burt Rogers testified this was executed without authority, and at the time he advised Preston and McGilvra of his lack of authority, which statement they dispute. The defendant testified that when the deed was executed to McKinney it contained no reference to the $3,000 mortgage, and the son testified he wrote that clause in after he received the deed. Judge Walts, the attorney for the respondent in this case, and who is her brother and a subscribing witness to the McKinney deed, testified, that it was his impression there was no allusion to the mortgage in the deed at the time of its execution. In explanation of the effect of his appearance in the foreclosure action, Cyrus Walts testified that he had no authority to appear for Orlo Rogers in that action. It is apparent from this résumé of the evidence that the vital questions involved in the case arose from the disputed facts, and which the jury might have determined either way and been supported by the evidence in the conclusion reached. We have gone thus extensively into the salient facts, not for the purpose of giving any intimation in regard to their proper solution or to the inferences fairly to be gathered from them, but to emphasize the statement that the decision of the case was peculiarly within the province of the jury.

Upwards of two days were taken up in the trial of the case. The jury were impaneled Thursday evening, October 19th, the trial continued on Friday, and an adjournment was had until the succeeding

Monday, and occupied the entire day.   The plaintiff's witness Pres-
ton gave his testimony in the presence of the jury.   The witness
Rice was also sworn on behalf of the plaintiff, but his testimony
was confined to the statement that the assumption clause in the deed
from the plaintiff to Orlo Rogers was in the handwriting of the plain-
tiff, which fact was thereupon conceded by the defendant's counsel.
The testimony of all the other witnesses for the plaintiff had been
taken by deposition before the trial, and was read to the jury.   Sev-
eral deeds had been received in evidence, and, in order that the jury
might get a clear comprehension of the issues involved, an explana-
tion of the facts and of the nature of the action was necessary.   The
evidence was closed in the afternoon of the third day of the trial.
The court stated he would allow 10 minutes on each side in which to
sum up this case.   The counsel for the appellant protested against
this abridgment of his time, saying:   "That length of time will be en-
tirely inadequate.   The evidence for the plaintiff has been almost
entirely read.   A long period of time has elapsed since the reading.
We ought to have at least an hour."   The court thereupon extended
the time to 15 minutes.   The trial justice commenced his charge to
the jury by informing them that:   "It is rather necessary that the
court should take the half past six train to-night, if it is possible to
do so; but in consideration of this case the court is desirous that
you do full and complete justice between these parties, even if you
cannot get in by half past six.   There is a single question here, and
it looks to me as though you could decide it about as quick as
counsel have been for the respective parties in addressing you on
the subject."   There were many requests to charge, and after they
were concluded the trial justice stated to the jury:   "Take this case,
and see how quick you can decide it.   Decide it honestly and right,
giving all the parties full consideration."   The jury retired at 5:40
and returned with their verdict at 6:15, thus giving heed to the in-
junction to dispose of the case quickly.   The trial justice in his very
brief charge stated "there is but a single question of fact here, and
that is whether or not Orlo Rogers, the deceased, had full knowledge
of the essential and material facts in regard to that assumption clause
in that deed."   While that fact was the pivotal one to be determined,
yet back of it was the question for the jury to settle whether Burt
Rogers was acting in behalf of his father.   An elucidation of the
facts upon which that authority was claimed to rest was essential
to enable the jury to comprehend the real nature of the controversy
they were called upon to decide.   No analysis of the testimony was
presented to the jury.   No explanation of the clauses in the various
conveyances was given, but the jury were left to work out a result
from this bald proposition of law, and with the injunction that a
prompt verdict was desired.   With all due respect to the learned trial
justice who presided at the trial, we are forced to the conclusion
that the case was not fairly presented to the jury.   The case was
an important one.   It involved questions not within the ordinary
compass of men residing in a rural community.   The testimony had
been largely read to them.   There was considerable documentary
evidence material and cogent to a proper decision of the case.   No

explanation was given to the jury to enable them to appreciate the contradictory testimony presented, but they might fairly believe from the charge of the court that the facts were easy of solution. This belief might well be stimulated by the statement of the trial justice that they ought to reach a conclusion "about as quick as counsel have been  *  *  *  in addressing you." The interruption of two days during the trial was after the plaintiff had rested, and after the greater part of the testimony on his behalf had been adduced, which was an additional reason for caution and deliberation by the court and jury. The verdict may have been correct, but the point which is impressed upon us is that, in view of all the circumstances we have adverted to, the case did not get that consideration from the court which the litigants were entitled to receive, and for that reason we are impelled to grant a new trial.

The judgment and order should be reversed, and a new trial granted, with costs and disbursements to appellant to abide the event. So ordered. All concur.